## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Rhonda Bennett, | ) | C/A No. 1:10-1931-RMG-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Michael J. Astrue, Commissioner, | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This appeal from a denial of social security benefits is before the court for a Report and Recommendation ("Report") pursuant to Local Civil Rule 73.02(B)(2)(a) (D.S.C.). Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The two issues before the court are whether the Commissioner's findings of fact are supported by substantial evidence and whether he applied the proper legal standards. For the reasons that follow, the undersigned recommends that the Commissioner's decision be affirmed.

I.     Relevant Background

A.     Procedural History

On November 20, 2007, Plaintiff filed applications for DIB and SSI under the Social Security Act ("the Act"), 42 U.S.C. §§ 401 433, 1381 1383c. Tr. at 93 109. In her applications, she alleged disability because of hearing and vision loss, arthritis, sleep apnea,

back pain, asthma, and depression.  Tr. at 161.  She initially alleged that her disability began on January 1, 2006.  Tr. at 161.  In a June 29, 2008 letter from her attorney, Plaintiff amended her alleged onset date to August 29, 2007.  Tr. at 136.  Her applications were denied initially and upon reconsideration. Tr. at 52  67, 74  77.  The Administrative Law Judge ("ALJ") held a hearing on Plaintiff's case on August 7, 2009.  Tr. at 20  51 (Hr'g Tr.).  The ALJ issued an unfavorable decision on October 23, 2009, finding that Plaintiff was not disabled within the meaning of the Act.  Tr. at 10  19.  Subsequently, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review.  Tr. at 1  5.  Thereafter, Plaintiff brought this action seeking judicial review of the Commissioner's decision in a Complaint filed on July 26, 2010.

 B. Plaintiff's Background and Medical History

  1. Background

Plaintiff was 44 years old at the time of the hearing.  Tr. at 24.  She completed the eleventh grade, attended the twelfth grade, but did not graduate from high school.  Tr. at 25.  She received some training through vocational rehabilitation, but she did not complete the program.  Tr. at 26.  Her past relevant work ("PRW") was as a wire harness assembler and a home healthcare attendant.  Tr. at 18, 45  46, 162.

  2. Medical History

On November 9, 2006, Plaintiff saw Dr. Bala Krishniah of Mauldin Medical

2

Associates as a new patient. Tr. at 271 73. Dr. Krishniah noted that Plaintiff had a history of obstructive sleep apnea, asthma, obesity, and retinal detachment. Tr. at 271 73. She reported shortness of breath and that her asthma was worsening. Plaintiff noted a family history of congestive heart failure and asked to be checked for it because her legs had been swelling even after she walked short distances. Tr. at 272. Dr. Krishniah examined Plaintiff and noted that she had a lazy right eye. She weighed 250 pounds. Tr. at 272. Dr. Krishniah noted that her first and second heart sounds were normal, but that she had a soft systolic murmur. Tr. at 272. Plaintiff had mild pitting edema in both ankles, and Dr. Krishniah had difficulty feeling her peripheral pulses. He found that her deep tendon reflexes were normal. Tr. at 272. Dr. Krishniah assessed Plaintiff with obstructive sleep apnea, morbid obesity, asthma, an ejection systolic murmur, leg edema, possible congestive heart failure, carotid bruit, and leg pain. Tr. at 273. He prescribed Lasix for her edema and an albuterol inhaler for her asthma. He also referred her for a cardiovascular evaluation. Tr. at 273.

On November 17, 2006, Plaintiff returned to Dr. Krishniah for follow up. Tr. at 270. He noted she had significant shortness of breath, but that he needed to further evaluate its cause. He also noted she had obstructive sleep apnea and fatigue. Tr. at 270. Her EKG showed normal rhythm and intervals with no ischemic changes. Tr. at 270. He ordered several additional tests, including a chest x-ray and a sleep study. Tr. at 270 71. The chest x-ray was taken on November 20, 2006, and indicated normal limits. Tr. at 254.

On December 7, 2006, Plaintiff saw Dr. Krishniah with complaints of low back pain.

3

Tr. at 269.  On examination, he found her back and spine were nontender, but that she had a limited range of motion because of her pain.  Tr. at 269.  He prescribed Daypro and Flexiril for back pain and ordered an x-ray of her lumbosacral spine.  Tr. at 269.  He continued her on Lasix for hypertension and an albuterol inhaler for asthma.  Tr. at 269.

Plaintiff had a lumbar spine x-ray on December 15, 2006, which showed mild disc narrowing at L4 5 and mild facet arthoropathy at L4 5 and L5 S1. The radiologist concluded Plaintiff had degenerative disease at L4 5 and L5 SI.  Tr. at 255.

On January 11, 2007, Dr. Krishniah noted that Plaintiff's participation in a sleep study indicated she had sleep apnea, for which he prescribed a CPAP (continuous positive airway pressure) machine.  Tr. at 268.  Dr. Krishniah noted Plaintiff's hypertension was well controlled, and she was advised to return within four to six weeks.  Tr. at 268.

Plaintiff saw Dr. Krishniah on February 16, 2007 regarding a painful ingrown toenail. Tr. at 266 67. At that visit, Plaintiff reported that the CPAP machine was helping her to sleep well and that it had helped with her shortness of breath. Tr. at 266. She again mentioned to Dr. Krishniah that she thought she could have heart disease based on her morbid obesity and her family history. Tr. at 266.  Plaintiff had a normal cardiovascular and respiratory examination, and she had a mild pedal edema in her ankles.  Tr. at 267.  Dr. Krishniah scheduled Plaintiff for toenail surgery, and he noted she was at high risk for cardiovascular disease.  Tr. at 267.

On March 19, 2007, Plaintiff had her hearing tested by Carolina ENT.  Tr. at 234 38.

4

The audiologist found that Plaintiff had sensorineural hearing loss, and she prescribed hearing aids for both ears.  Tr. at 238.

Plaintiff returned to Dr. Krishniah on May 15, 2007 for follow up and to have him complete some forms.  Tr. at 264.  She complained of having shortness of breath with minimal exertion.   Dr. Krishniah observed that Plaintiff looked alert and comfortable, and he did not change her treatment. Tr. at 264. He continued her existing regime and scheduled a nuclear stress test for her.  Tr. at 264.

On August 6, 2007, Plaintiff again saw Dr. Krishniah with complaints of low back pain.  Tr. at 262  63.  She said performing strenuous activities at work and helping care for her aunt had exacerbated her pain.  Tr. at 262.  He described Plaintiff's shortness of breath as stable and noted she had no complaints of tingling, numbness or weakness in her legs. Tr. at 262.  He found Plaintiff had limited range of lumbar motion and that pain made her unable to do straight leg raising testing.  Tr. at 262.  Dr. Krishniah noted that Plaintiff was morbidly obese and that losing weight would significantly improve her back pain.  Tr. at 262  63.  He prescribed Darvocet for pain and advised her not to work for two days.  Tr. at 263.  He ordered an MRI of the lumbar spine, and he instructed Plaintiff to follow up in two weeks. Tr. at 263.

Plaintiff's MRI of her lumbar spine on August 21, 2007, revealed  a moderate right side disc herniation at L4  5 with right L4 root compression and possible mild right L5 transverse root compression.  Tr. at 256.

5

Plaintiff returned to Dr. Krishniah on August 23, 2007.  Tr. at 261.  He noted that her lumbar spine MRI had been normal, and he had explained the results to her.  Tr. at 261.  He indicated her asthma and sleep apnea were stable, but noted she complained of difficulty hearing with hearing aids because of impacted ear wax.  Tr. at 261.  Dr. Krishniah found that Plaintiff's back pain was improving, and he changed her pain medication.  Tr. at 261.  He counseled her to continue using the CPAP machine and to use ear drops for the ear wax.  Tr. at 261.  She was to follow up with Dr. Krishniah in three months.  Tr. at 261.

On November 8, 2007, Plaintiff returned to Dr. Krishniah with complaints of severe back pain that radiated into her legs and that Darvocet would not relieve.  Tr. at 297.  Dr. Krishniah noted that Plaintiff's recent MRI had shown moderate disc herniation at L4  L5 with right L4 root compression and possible mid right L5 transfers root compression.  Tr. at 297.  On examination, he described Plaintiff's back and spine as nontender, but he noted that pain limited her range of motion and that she had not been able to do the straight leg raising test.  Tr. at 297.  Dr. Krishniah diagnosed lumbar disc disease with herniation and severe pain, changed her medication, and referred her to pain management specialist Kenneth A. Marshall, M.D.  Tr. at 297.

On November 16, 2007, Plaintiff saw Dr. Marshall and told him that she began having back pain while working in a nursing home in the early 1990s and that a later job at a hotel had made it worse.  Tr. at 247  49.  Plaintiff  indicated that the pain had been progressively worsening, and that her chronic pain medications were not as effective as they had been in

6

the past, particularly for her low back pain. Tr. at 247. She stated that the pain was preventing her from working. Tr. at 247. Dr. Marshall noted that Plaintiff's recent lumbar MRI showed a moderate herniation at L4 5 with some possible right L4 and L5 nerve root compression. Tr. at 247. On examination, Dr. Marshall noted that Plaintiff was five feet six inches tall, weighed 262 pounds, and was in no apparent distress. Tr. at 248. He found that her cervical and lumbar range of motion were fairly well-preserved, with some complaints of pain with cervical rotation. Tr. at 248. She had diffuse tenderness in her back, no muscle spasms, and normal sensation and reflexes. Tr. at 248. Plaintiff had crepitus with knee movement bilaterally, particularly on the right. Tr. at 248. Dr. Marshall assessed Plaintiff with chronic low back, neck, and thoracic spine pain, as well as lumbar spondylosis. Tr. at 248. Dr. Marshall offered Plaintiff facet joint injections or epidural steroid injections, but she did not want to have injections because she was afraid of needles. Tr. at 248. Dr. Marshall then recommended physical therapy and an adjustment of her medications. Tr. at 248.

On December 6, 2007, Plaintiff saw Dr. Krishniah with stomach symptoms. Tr. at 259. In his notes from that visit, Dr. Krishniah noted that Plaintiff was to continue pain management, physical therapy, and pain medication for her chronic pain. Tr. at 259. He also noted she should lose weight because of her obesity and obstructive sleep apnea. Tr. at 259.

On January 14, 2008, Plaintiff went to the ER with complaints of constant pain in her hands and feet. Tr. at 287 89. On examination, Plaintiff was alert, oriented, calm, and

cooperative.  Tr. at 288.  The attending physician, Dr. Tracy Lance, diagnosed her with arthralgia (joint pain), prescribed a new medication, and advised Plaintiff that she should keep moving the affected area.  Tr. at 289.

On January 31, 2008, state agency physician Dale Van Slooten, M.D. reviewed Plaintiff's medical record and completed a Physical Residual Functional Capacity ("RFC") Assessment of Plaintiff.  Tr. at 277 84.  Dr. Van Slooten opined that Plaintiff could lift and carry 50 pounds occasionally and 25 pounds frequently; stand and/or walk about six hours in an eight-hour day; sit about six hours in an eight-hour day; never climb ladders, ropes, or scaffolds; occasionally climb ramps and stairs; occasionally stoop, kneel, crouch, and crawl; and frequently balance.  Tr. at 278.  He placed no limits on Plaintiff's ability to operate hand or foot controls, push/pull, reach in all directions or manipulate things, see, or communicate. Tr. at 278, 280 81.  He found that Plaintiff should avoid concentrated exposure to noise and hazards such as machinery or heights, but placed no other environmental limitations. Tr. at 281.  Dr. Van Slooten noted that Plaintiff's file did not include a statement or opinion by Plaintiff's treating physician or other treating source regarding her physical capabilities.  Tr. at 283.

On February 28, 2008, Dr. Krishniah completed an RFC questionnaire for Plaintiff. Tr. at 290 93.  He noted that he began seeing Plaintiff in November 2006 and that he saw her every three or four months.  Tr. at 290.  Dr. Krishniah indicated that Plaintiff had lumbar disc disease and chronic pain.  Tr. at 290.  His prognosis was that she was stable.  Tr. at 290.

He indicated that Plaintiff's pain in her low back was sharp and that standing or walking made it more severe. Tr. at 290. He indicated she had a limited range of motion in her low back and that she could raise her legs 20 or 30 degrees during a straight leg raise test. Tr. at 290. He noted that Plaintiff took Lortab for pain and that it caused her to be drowsy. Tr. at 290. He opined that Plaintiff was not a malingerer, and that emotional factors, including depression, contributed to her physical condition. Tr. at 291. Further, Dr. Krishniah indicated that Plaintiff's physical and emotional impairments were reasonably consistent with her functional limitations, and that her pain and other symptoms would frequently interfere with the attention and concentration needed to perform simple work tasks. Tr. at 291. He opined that she could tolerate low stress jobs, but that her pain made her unable to sit or stand for long periods. Tr. at 291. Dr. Krishniah opined that Plaintiff could walk one half to one block at a time; sit for 20 minutes at a time; and stand for 15 to 20 minutes at a time. Tr. at 291. He found that Plaintiff could sit and stand/walk fewer than two hours in an eight-hour work day, needed to walk every five minutes, to shift positions at will, to take unscheduled breaks during an eight-hour day, and to elevate her legs with prolonged sitting. Tr. at 292. Dr. Krishniah noted Plaintiff could lift no more than ten pounds on an infrequent basis. Tr. at 292. He opined that Plaintiff could only rarely look up, and that she could occasionally look down, turn her head right or left, or hold her head stable. Tr. at 292. He opined that she could never twist, crouch, or climb ladders; could rarely stoop and climb stairs; had significant limitations with reaching, handling, and fingering; and that her impairments or

treatments would cause her to miss work more than four days a month. Tr. at 293. Dr. Krishniah also opined that Plaintiff had good and bad days, and that she had begun experiencing the described symptoms and limitations a year prior to his completing the form. Tr. at 293.

On March 5, 2008, Plaintiff saw Dr. Raju Patnam with complaints of low back pain and pain when urinating. Tr. at 301. Dr. Patnam diagnosed Plaintiff with low back pain and a urinary tract infection. Tr. at 301. On examination, he noted that she was stable, alert, and active, but that she was limping and in pain he described as an eight on a scale of ten. Tr. at 301. He prescribed antibiotics and pain medication. Tr. at 301.

On March 6, 2008, Plaintiff saw Dr. Krishniah with complaints that her urinary tract infection was still painful. He found that her back and spine were nontender, adjusted her medications for the infection, advised her to lose weight, and told her to follow up in three months. Tr. at 302.

On April 22, 2008, Plaintiff saw Dr. Krishniah with complaints of swollen and painful tonsils. Tr. at 332. He observed that Plaintiff had chronic lumbar disc disease with chronic pain, and referred her to an ear, nose, and throat specialist for a possible tonsillectomy. Tr. at 332.

Plaintiff consulted with Robert C. Waters, M.D. on May 5, 2008, for evaluation of enlarged tonsils. Tr. at 304. She reported that she had been diagnosed with sleep apnea and had been prescribed a CPAP, but that she did not always use it because it was uncomfortable.

10

Tr. at 304.  She also told him that she had hearing loss that hearing aids helped remedy.  Tr. at 304.  On examination, Dr. Waters found Plaintiff to be alert and oriented.  Tr. at 304.  Dr. Waters found that Plaintiff's tonsils were extremely large, and he recommended a tonsillectomy with overnight observation because of her asthma and sleep apnea.  Tr. at 304.

On May 21, 2008, state agency consultant Lisa Varner, Ph.D. reviewed Plaintiff's record and completed a Psychiatric Review Technique Form.  Tr. at 305  18.  She concluded that, for the period from January 1, 2006 through May 21, 2008, Plaintiff did not have a medically determinable mental impairment.  Tr. at 305.  She noted that, although Plaintiff claimed to have depression, her medical records did not include any diagnosis or treatment of any mental conditions.  Tr. at 317.

On May 22, 2008, state agency physician Carl E. Anderson, M.D. reviewed Plaintiff's medical record and completed an RFC assessment form.  Tr. at 322  29.  He opined that Plaintiff could lift and carry 50 pounds occasionally and 25 pounds frequently; stand and/or walk about six hours in an eight-hour day; sit about six hours in an eight-hour day; occasionally climb ladders, ropes, and scaffolds; frequently climb ramps and stairs; occasionally stoop and crawl; frequently balance, kneel, and crouch; and work in avoidance of concentrated exposure to noise and hazards. Tr. at 323  24, 326.  He placed no limits on Plaintiff's ability to operate hand or foot controls, push/pull, reach in all directions or manipulate things, see, or communicate.  Tr. at 323, 325  26.

On June 26, 2008, Plaintiff saw Dr. Krishniah, who noted that Plaintiff planned to

11

have a tonsillectomy.  Tr. at 331.  He noted that she was having shortness of breath that was mainly related to her sleep apnea.  Tr. at 331.  On examination, Plaintiff had no neurological deficits or edema.  Tr. at 331.  Dr. Krishniah told her to continue her medications and to follow up after her tonsillectomy. Tr. at 331.

Plaintiff saw Dr. Krishniah on August 10, 2008 with complaints of body aches and sinus congestion.  Tr. at 344  45.  Dr. Krishniah prescribed medication for the congestion. Tr. at 345.

On November 1, 2008, Plaintiff saw Dr. Krishniah with complaints of allergies and neck pain. Tr. at 343.  Dr. Krishniah indicated that Plaintiff's allergies were worsening and that she possibly had cervical disc disease with pain.  Tr. at 343.  He ordered a neural scan to check for neuropathy, and he gave her a Kenalog injection and additional prescriptions. Tr. at 343.

On January 2, 2009, Plaintiff again saw Dr. Krishniah, complaining of cervical pain that radiated down her shoulders and, at times, into her arms.  Tr. at 348  49.  On examination, Dr. Krishniah found that Plaintiff's neck was supple and that she had normal range of motion in her neck and shoulders.  Tr. at 348.  He found she had no neurological deficits.  Tr. at 348.  He indicated that she had possible radiculopathy, and he ordered a cervical spine MRI.  Tr. at 349.  He indicated her sleep apnea was stable.  Tr. at 349.

Plaintiff returned to Dr. Krishniah on January 16, 2009 with continued complaints regarding cervical and brachial pain.  Tr. at 347.  He indicated that her morbid obesity was

worsening her lumbar radiculopathy, and he referred her to a specialist for evaluation of her cervical and brachial symptoms. Tr. at 347.

    C.    The Administrative Proceedings

        1.    The Hearing

Plaintiff testified before the ALJ at her August 7, 2009 hearing that she lived with her parents, and that she had three adult children. Tr. at 25. She said she last worked in August 2007. Tr. at 28. She testified she hurt her back when working in housekeeping at a motel. Tr. at 30. She said she took medication for her back pain, but that she had not gone to physical therapy or had any injections. Tr. at 30 31. At the time of the hearing, she rated her back pain as a nine on a ten-point scale. Tr. at 31 32. Plaintiff reported that she had sleep apnea, but that the CPAP machine allowed her to sleep well. Tr. at 32. She testified she was five feet two inches tall, weighed 238 pounds, and had arthritis in both knees. Tr. at 32 33. She said she could see with her left eye, but not with her right. Tr. at 33 34. She said she could hear pretty well with hearing aids and that an inhaler gave her temporary relief from asthma symptoms. Tr. at 33. She indicated she saw her medical doctor for depression, but that she had not seen a psychiatrist or psychologist. Tr. at 34 35. She said that her depression sometimes affected her ability to focus or concentrate and to be in public. Tr. at 37. She estimated that she would be able to walk about ten minutes, sit about 15 or 20 minutes, and lift about two or three pounds. Tr. at 36 37.

She said she went to church with her parents about three Sundays per month, but that

she was not as active in her church as she had been.  Tr. at 38.  She described her days as

including eating, taking medications, sitting, and lying down.  Tr. at 38.  When asked about

hobbies, she said she liked to read during the day.  Tr. at 38.  She said she could bathe herself

when she used a shower chair, she sometimes dressed herself, and her mother sometimes

assisted her.  Tr. at 39.  Plaintiff testified she did not cook, shop, do laundry, or do

housework.  Tr. at 39  40.

    2.  Vocational Expert's Testimony

Vocational Expert ("VE") Kathleen Robbins, Ph.D. also testified at the August 2009

hearing. The ALJ asked Dr. Robbins to assume a hypothetical individual of Plaintiff's age,

education and work experience, who was capable of:

> lift[ing] up to 20 pounds occasionally, lift[ing] and carry up to 10 pounds
> frequently, light work as defined by the regulations.  Standing or walking for
> approximately six hours per eight-hour workday and sitting for approximately
> six hours per eight-hour workday. . . . [O]ccasional climbing of ladders, ropes,
> scaffolds, frequent climbing of ramps and stairs, frequent balancing,
> occasional stooping, frequent crouching, occasional crawling.  Avoiding
> concentrated exposures to irritants such as fumes, odors, dust and gases, avoid
> concentrated exposure to hazards. Limited to jobs requiring . . . far acuity. .
> . . Work is limited to simple, routine and repetitive tasks with occasional
> interaction with the public.

 Tr. at 47  48.

Dr. Robbins testified that such an individual could not perform Plaintiff's PRW, but

that she could perform the representative unskilled light jobs of housekeeper (4,000 jobs

locally and 220,000 nationwide) and office helper (3,000 jobs locally and 250,000 jobs

nationwide).  Tr. at 48  49.  In response to a question from Plaintiff's counsel, the VE

testified that if Plaintiff had the limitations Dr. Krishniah opined she had, she would be unable to perform any work.  Tr. at 50.

II.     Discussion

Plaintiff alleges the ALJ erred by not attributing controlling weight to the opinion of her treating physician.  She also claims that the ALJ improperly failed to provide a specific function-by-function assessment of her RFC and by failing to assess the impact of her obesity on her capabilities.  The Commissioner counters that substantial evidence supports the ALJ's findings and that the ALJ committed no legal error in his decision.

A.     The ALJ's Findings

In his October 23, 2009 decision, the ALJ made the following findings of fact and conclusions of law:

1.     The claimant meets the insured status requirements of the Social Security Act through March 31, 2009.

2.     The claimant has not engaged in substantial gainful activity since January 1, 2006, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).[1]

3.     The claimant bas the following severe impairments: obesity; spinal disorders; arthritic knees; low vision; asthma; depression (20 CFR 404.1520(c) and 416.920(c)).

4.     The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR

_____

[1]The court notes that Plaintiff amended her alleged onset date to August 29, 2007. *See* Tr. at 136 (June 29, 2009 ltr. from Plaintiff's counsel to SSA amending onset date).

404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can occasionally climb ladders, ropes, and scaffolds and may frequently climb ramps and stairs. The claimant can frequently balance, kneel and crouch, and may occasionally stoop and crawl. The claimant is limited to jobs that do not require far acuity. The claimant should avoid fumes, odors, dust and gases, and hazards. The claimant can perform simple repetitive tasks and may have occasional contact with the public.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on July 6,1965 and was 40 years old, which is defined as a younger individual age 18  49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because  using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82·41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404. 1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2006 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Tr. at 12  14, 18  19.

B.    Legal Framework

1.    The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured

for benefits, who are not of retirement age, who properly apply, and who are under a

"disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as:

> the inability to engage in any substantial gainful activity by reason of any
> medically determinable physical or mental impairment which can be expected
> to result in death or which has lasted or can be expected to last for at least 12
> consecutive months.

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations

promulgated under the Act have reduced the statutory definition of disability to a series of

five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983)

(discussing considerations and noting "need for efficiency" in considering disability claims).

An examiner must consider the following: (1) whether the claimant is engaged in substantial

gainful activity; (2) whether she has a severe impairment; (3) whether that impairment meets

or equals an impairment included in the Listings; (4) whether such impairment prevents

claimant from performing PRW; and (5) whether the impairment prevents him from doing

substantial gainful employment. *See* 20 C.F.R. § 404.1520. These considerations are

sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a

decision regarding disability may be made at any step, no further inquiry is necessary. 20

C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not

17

disabled at a step, Commissioner makes determination and does not go on to the next step.).

A claimant is not disabled within the meaning of the Act if she can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82 62 (1982). The claimant bears the burden of establishing her inability to work within the meaning of the Act.  42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy.  To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that she is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264 65 (4th Cir. 1981)*; see generally Bowen v. Yuckert*, 482 U.S. 137, 146. n.5 (1987) (regarding burdens of proof).

2.    The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [] made after a hearing to which he was a party."  42 U.S.C. § 405(g).  The scope of that federal court review is narrowly-tailored to determine whether the findings of

the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*, *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002) (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 428 F.2d 1157, 1157  58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence.  "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005).  Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that his conclusion is rational. *See Vitek v. Finch*, 428 F.2d at 1157  58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964).  If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

C.    Analysis

Plaintiff alleges that the ALJ erred in the following ways: (1) by affording no weight to the opinion of her treating physician; (2) by not including a function-by-function analysis of her RFC; and (3) by not following SSR 02-1p in evaluating any impact of her obesity on

her RFC.  The Commissioner counters that substantial evidence supports the ALJ's findings and that the ALJ committed no legal error in his decision.

        1.     The ALJ's Consideration of the Treating Physician's Opinion

Plaintiff first argues that the ALJ violated the Commissioner's regulations and rulings because he did not afford the opinion of Dr. Krishniah controlling weight.  Pl.'s Br. at 4 7; Pl.'s Reply at 1 2.  The Commissioner defends the ALJ's decision by arguing that Dr. Krishniah's opinion was inconsistent with the record evidence, including his own notes concerning Plaintiff's treatment and her testimony. Def.'s Br. at 12 15.

If a treating source's medical opinion is "well-supported and 'not inconsistent' with the other substantial evidence in the case record, it must be given controlling weight[.]" SSR 96-2p; *see also* 20 C.F.R. § 404.1527(d)(2) (providing treating source's opinion will be given controlling weight if well-supported by medically-acceptable clinical and laboratory diagnostic techniques and inconsistent with other substantial evidence in the record); *see also Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996) (finding a physician's opinion should be accorded "significantly less weight" if it is not supported by the clinical evidence or if it is inconsistent with other substantial evidence). When assessing a treating source's opinion, the ALJ must consider the factors in 20 C.F.R. §§ 404.1527(d)(2) through (d)(6).

The Social Security Administration typically accords greater weight to the opinion of a claimant's treating medical sources, because such sources are best able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. *See* 20 C.F.R. §

404.1527(d)(2). However, "the rule does not require that the testimony be given controlling weight." *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (per curiam). Rather, "[c]ourts evaluate and weigh medical opinions pursuant to the following non-exclusive list:  (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson*, 434 F.3d at 654; 20 C.F.R. § 404.1527(d).  The rationale for the general rule affording opinions of treating physicians greater weight is "because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant." *Johnson*, 434 F.3d at 654 (*quoting Mastro v. Apfel,* 270 F.3d 171, 178 (4th Cir. 2001)). Further, in undertaking review of the ALJ's treatment of Plaintiff's treating physician, the court notes that its review is focused on whether the ALJ's opinion is supported by substantial evidence and that its role is not to "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Craig*, 76 F.3d at 589.

Dr. Krishniah opined that Plaintiff's lumbar disc disease caused chronic pain that would impact her ability to work.  Tr. at 290  93.  He indicated she could not sit or stand for long hours, could walk no more than one half to one block, could sit for twenty minutes at a time, stand for fifteen to twenty minutes at a time, and could sit, stand, or walk for fewer than two hours in an eight hour work day.  Tr. at 290  93.  He also indicated that Plaintiff's

21

impairments would cause her to miss more than four days of work per month.  Tr. at 293.

Plaintiff argues that this opinion was entitled to controlling weight.  However, the ALJ has the discretion to give less weight to the opinion of a treating physician when there is "persuasive contrary evidence."  *Mastro*, 270 F.3d at 176.  In rejecting Dr. Krishniah's opinion, the ALJ found the following:

> When compared to the sparse notes of Dr. Krishniah, [Dr. Krishniah's] "opinion" appears to be highly subjective and claimant driven because it is inconsistent with the his own treating records, the records as a whole and other evidence which reveals that the claimant was working through at least August 29, 2007 [], during the period covered by his opinion that she can not work. Accordingly, the undersigned is rejecting the unsupported and inconsistent opinion of Dr. Krishniah that the claimant can not work and the limitations he has opined exist for the claimant and is giving it no weight.

Tr. at 17.  Although he gave no weight to Dr. Krishniah's February 28, 2008 opinion, the ALJ indicated that he gave some weight to Dr. Krishniah's treatment records, to the extent they were consistent with Plaintiff's RFC.  Tr. at 17.  He also indicated that he gave some weight to the opinions of the state medical consultants.  Tr. at 17.

Plaintiff claims that the ALJ disregarded Dr. Krishniah's opinion in error because it was supported by objective medical evidence. In particular, Plaintiff points to Dr. Krishniah's findings that an MRI revealed she had herniated discs that caused nerve root compression and pain.  Plaintiff further argues that the ALJ erred by not explaining what in Dr. Krishniah's treating records were inconsistent with his February 2008 opinion.  Pl.'s Br. at 5  6.

The court agrees with the Commissioner.  In considering Dr. Krishniah's opinion, the

ALJ discussed his treatment of Plaintiff and explained why he discounted it.  Tr. at 13, 16  17.  Citing *Brinkley v. Astrue*, 695 F. Supp. 2d 269 (D.S.C. 2010), Plaintiff argues that the ALJ's rejection of Dr. Krishniah's opinion was erroneous because he did not explain what was inconsistent between Dr. Krishniah's opinion and his medical records.  Pl.'s Br. at 6.

In *Brinkley*, the court remanded the matter for additional consideration because the ALJ rejected the treating source's opinion as being inconsistent with his treatment notes without identifying the inconsistencies or discussing the source's treatment notes at all. *Brinkley*, 695 F. Supp. 2d at 280.  Unlike the facts of *Brinkley*, here the ALJ discussed Dr. Krishniah's treatment notes and findings and referred to inconsistencies between the opinion and the treatment notes.  Tr. at 13, 16  17.  He noted that Dr. Krishniah and Dr. Marshall had treated Plaintiff's spinal issues conservatively and she had been able to work with back pain for years.  Tr. at 16.  He noted that the record did not include any clear event that would have caused her condition to change for the worse.  Tr. at 16  17.  The ALJ described Dr. Krishniah's examinations and treatment of Plaintiff "quite benign" when explaining why he discounted Dr. Krishniah's February 2008 opinion, finding it was "highly subjective and claimant driven."  Tr. at 17.

The ALJ also discussed Dr. Krishniah's inconsistency within his treatment records. Tr. at 16.  Plaintiff's August 2007 MRI, which Dr. Krishniah had ordered, revealed a disc herniation with root compression. Tr. at 256. When explaining the MRI results to Plaintiff

23

on August 23, 2007, he told Plaintiff that the results had been "normal," and he noted that Plaintiff's back pain was resolving. Tr. at 261. When Plaintiff returned to Dr. Krishniah in November 2007, Dr. Krishniah cited the same MRI findings as being connected to Plaintiff's back pain. Tr. at 297. The ALJ noted this changed interpretation of the MRI in discussing Dr. Krishniah's treatment of Plaintiff. Tr. at 16 (noting Dr. Krishniah "reversed himself").

The undersigned is of the opinion that the ALJ set forth sufficient detail regarding the reasons he discounted Dr. Krishniah's opinion. Nothing in Dr. Krishniah's treatment notes indicate that he ever placed any specific restrictions or limitations on Plaintiff's activities while he treated her for her pain complaints. *See Montgomery v. Chater*, No. 95-2851, 1997 WL 76937, at *1 (4th Cir. Feb. 25, 1997) (upholding the ALJ's finding that treating physician's opinion was not persuasive, in part, because his opinion was not supported by contemporaneous treatment records); *see Branum v. Barnhart*, 385 F.3d 1268, 1274 75 (10th Cir. 2004) (upholding rejection of a treating physician's opinion, in part, because the physician saw claimant infrequently and the only treatment provided was medical prescriptions); *see Crisp v. Astrue*, C.A. 3:09-1563-HFF-JRM, 2011 WL 1113962, at *10 (D.S.C. Feb. 16, 2011) (*accepted* by 2011 WL 113537 (Mar. 28, 2011) (*citing Branum* in finding ALJ's discounting treating physician's opinion was appropriate). Additionally, both Dr. Krishniah and Dr. Marshall recommended Plaintiff pursue physical therapy, but she did not follow that advice. Tr. at 248, 259. *See* 20 C.F.R. § 404.1530(b) (noting failure to follow prescribed treatment may be grounds for finding no disability); *cf. Hunter v. Sullivan*,

24

993 F.2d 31, 36 (4th Cir. 1992) (finding claimant's failure to adhere to treatment regime supportive of ALJ's credibility findings).

Further, Dr. Krishniah opined that Plaintiff had the symptoms and limitations discussed in his opinion as of February 28, 2007.  Tr. at 293.  In rejecting the limitations about which Dr. Krishniah opined, the ALJ noted that Plaintiff had worked until August 29, 2007, which was within the time frame Dr. Krishniah opined Plaintiff had limitations that would have prevented her from working.  Tr. at 17.  Plaintiff argues that this was not a valid reason for the ALJ to give Dr. Krishniah's opinion no weight.  Pl.'s Br. at 7.  The court finds that the ALJ appropriately considered that point as one of several articulated reasons for discounting Dr. Krishniah's opinion.

Plaintiff also claims the ALJ erred by discounting Dr. Krishniah's opinion because he was the only treating source who proffered an opinion regarding her RFC.  She claims that opinion evidence from the consulting sources is not sufficient to support the Commissioner's denial of a disability claim "when it is contradicted by all other evidence of record."  Pl.'s Br. at 7 (*citing Leonard v. Schweiker*, 724 F.2d 1076, 1078 (4th Cir. 1983)).  Similarly, she argues the ALJ erred because he did not consider the factors set out in 20 C.F.R. § 404.1527, including the length of treatment and the treatment relationship when discounting Dr. Krishniah's opinion.

Plaintiff's argument is without merit.  The ALJ considered the opinions of the nonexamining physicians and accorded them "some weight," although he found Plaintiff's

25

RFC was more limited than the consultants opined based on his consideration of Plaintiff's obesity.  Tr. at 17.  He explained that he had considered those opinions in conjunction with the treatment records of Dr. Marshall and Dr. Krishniah, which he gave some weight.  Tr. at 17.

Dr. Van Slooten concluded Plaintiff could lift and carry 50 pounds occasionally and 25 pounds frequently; stand and/or walk about six hours in an eight-hour day; sit about six hours in an eight-hour day; never climb ladders, ropes and scaffolds; occasionally climb ramps and stairs; occasionally stoop, kneel, crouch, and crawl; frequently balance; and work in avoidance of concentrated exposure to noise and hazards. Tr. 277 84.  Dr. Anderson concluded that Plaintiff retained the ability to lift and carry 50 pounds occasionally and 25 pounds frequently; stand and/or walk about six hours in an eight-hour day; sit about six hours in an eight-hour day; occasionally climb ladders, ropes, and scaffolds; frequently climb ramps and stairs; occasionally stoop and crawl; frequently balance, kneel, and crouch; and work in avoidance of concentrated exposure to noise and hazards.  Tr. 322 29. *See Johnson*, 434 F.3d at 657 (ALJ properly awarded significant weight to non-treating, non-examining physician who thoroughly reviewed claimant's medical records and whose opinion was supported by objective medical evidence and other medical opinions).

The ALJ accepted some, but not all, of these opinions and provided cogent reasons for his treatment of the opinions.  Contrary to Plaintiff's argument, the consultants' opinions were not contradicted by all other evidence of record. Pl.'s Br. at 7.  The ALJ satisfied his

obligations set out in SSR 96-2p, expressly considering the consultants' opinions in conjunction with the records of Dr. Krishniah and Dr. Marshall, both of whom treated Plaintiff. Because the ALJ's evaluation of the opinions of record is supported by substantial evidence and free of reversible legal error, the undersigned recommends this allegation of error be dismissed.

2.    The ALJ's Adherence to SSR 96-8p in Considering Plaintiff's RFC

Next, Plaintiff argues that the ALJ violated SSR 96 8p because his findings regarding her RFC were not sufficiently detailed. The ALJ found:

> After careful consideration of the entire record the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can occasionally climb ladders, ropes, and scaffolds and may frequently climb ramps and stairs. The claimant can frequently balance, kneel and crouch, and may occasionally stoop and crawl. The claimant is limited to jobs that do not require far acuity. The claimant should avoid fumes, odors, dust and gases and hazards. The claimant can perform simple repetitive tasks and may have occasional contact with the public.

Tr. at 14.

> SSR 96-8p provides, in part, as follows:

> The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraph (b), (c), and (d) of 20 CFR 404.1545 and 416.945. Only after that may RFC be expressed in terms of the exertional level of work, sedentary, light, medium, heavy and very heavy.

SSR 96-8p. Plaintiff argues that SSR 96-8p requires the ALJ to discuss Plaintiff's abilities on a function-by-function basis prior to determining whether her RFC is within the category

of sedentary, light, medium, heavy, or very heavy.  Pl.'s Br. at 8  10.

Plaintiff concedes that no Fourth Circuit case has considered the issue of how much written detail an ALJ's decision must include in analyzing a claimant's RFC prior to determining what work she may perform.  Plaintiff urges the court to adopt the requirement set out by the Fifth and Eighth Circuits that required each function be explicitly assessed. *See Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001); *Pfitzner v. Apfel*, 169 F.3d 566, 568 (8th Cir. 1999).

Plaintiff further acknowledges that the only published case from this district of which she is aware that remanded a matter to the ALJ for a function-by-function assessment, *Vo v. Astrue*, 518 F. Supp. 2d 715 (D.S.C. 2007), was remanded because the matter was already being remanded for other reasons.  She acknowledges that the *Vo* court suggested that failure to perform such detailed analysis could be harmless error, but argues the ALJ's failure to make such findings in her case was not harmless error. *Vo*, 518 F. Supp. 22 at 731. More particularly, Plaintiff argues the ALJ erred because he did not specifically assess her ability to stand, sit, walk, lift, bend, or carry.  Further, she argues the ALJ did not discuss and assess her need to elevate her feet.  Plaintiff claims that the lack of detailed analysis regarding these seven strength demands makes the decision unreviewable. She claims that the ALJ did not expressly consider her capacity in view of her claimed need to be able to elevate her legs because of fluid build up. *See* Pl.'s Br. at 10 (citing Tr. at 43 (Plaintiff testified her legs swell when standing after long periods of time and that she normally elevates them on the couch

when at home)).  Plaintiff also cited to medical records that indicated she had leg edema and

pitting edema of both ankles.  Tr. at 270, 272.  Plaintiff notes, too, that Dr. Krishniah opined

that she needed to elevate her feet 30% of the time.  Tr. at 292.  Plaintiff claims that this

portion of Dr. Krishniah's opinion is "neither accepted nor explicitly rejected in the

Commissioner's decision in any place in the narrative or the RFC."  Pl.'s Br. at 10.

In response, the Commissioner argues that the ALJ complied with SSR 96-8p by

providing a detailed discussion of how the evidence supported his conclusions.  Def.'s Br.

at 15 (*citing* Tr. at 15  17).  The Commissioner points out that the ALJ's decision included

details regarding how he considered and resolved material inconsistencies or ambiguities in

the evidence in the case record, by discussing Plaintiff's testimony regarding her symptoms

and abilities in conjunction with the opinion evidence.

Further, the Commissioner argues that the ALJ's incorporation of 20 C.F.R. §§

404.1567(b) and 416.967(b) into his findings regarding Plaintiff's RFC provides specific

findings regarding her ability to lift, carry, stand, and walk.  The ALJ found Plaintiff had the

capacity to perform light work as defined by these regulations, with the exception of specific

limits he articulated.  Tr. at 14.

> (b) Light work. Light work involves lifting no more than 20 pounds at a time
> with frequent lifting or carrying of objects weighing up to 10 pounds. Even
> though the weight lifted may be very little, a job is in this category when it
> requires a good deal of walking or standing, or when it involves sitting most
> of the time with some pushing and pulling of arm or leg controls. To be
> considered capable of performing a full or wide range of light work, you must
> have the ability to do substantially all of these activities. If someone can do
> light work, we determine that he or she can also do sedentary work, unless

> there are additional limiting factors such as loss of fine dexterity or inability
> to sit for long periods of time.

20 C.F.R. § 404.1567(b) *see also* SSR 83-10 (stating the lifting, sitting, standing, and walking criteria for light work).

The court agrees with the Commissioner. RFC determinations may contain implicit findings, including a finding regarding lifting, sitting, standing, and walking. *See, e.g., Hines v. Barnhart*, 453 F.3d 559, 563 (4th Cir. 2006) ("In light of SSR 96-8p, [the ALJ's] conclusion [that Plaintiff could perform a range of sedentary work] implicitly contained a finding that Mr. Hines physically is able to work an eight hour day."); *Depover v. Barnhart*, 349 F.3d 563, 567 (8th Cir. 2003) (holding that the ALJ implicitly found claimant was not limited in the areas of sitting, standing and walking, when the ALJ specifically addressed in the RFC the functions in which he found a limitation). Further, the ALJ expressly considered and rejected the entire opinion of Dr. Krishniah. This necessarily includes his opinion that Plaintiff would need to elevate her legs for 30% of an eight hour day. Tr. at 17 (rejecting limitations contained in Dr. Krishniah's opinion). The undersigned recommends finding this allegation of error to be without merit.

　　　　3.　　The ALJ's Consideration of Plaintiff's Obesity Pursuant to SSR 02-1p

Finally, Plaintiff alleges the ALJ did not consider the effect her obesity had on her RFC. SSR 02-1p provides, in pertinent part, as follows:

> * * *
> Obesity can cause limitation of function. The functions likely to be limited
> depend on many factors, including where the excess weight is carried. An

30

individual may have limitations in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling. It may also affect ability to do postural functions, such as climbing, balance, stooping, and crouching. The ability to manipulate may be affected by the presence of adipose (fatty) tissue in the hands and fingers. The ability to tolerate extreme heat, humidity, or hazards may also be affected.

* * *

The combined effects of obesity with other impairments may be greater than might be expected without obesity. For example, someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from the arthritis alone.

. . .

As with any other impairment, we will explain how we reached our conclusions on whether obesity caused any physical or mental limitations.

SSR 02-1p, 67 FR 57859-02 at *57862  63.

In discussing Plaintiff's obesity, the ALJ stated the following:

The records clearly indicate that the claimant suffers from morbid obesity and has been repeatedly advised to lose weight to reduce her overall symptoms (Ex. 18F, 6F, 9F, 15F). The records indicate that weight loss will help reduce her obstructive sleep apnea and may reduce her musculoskeletal complaints. Accordingly, in developing the residual functional capacity delineated above, the undersigned has considered the effects of the claimant's morbid obesity SSR 02-1p.

Tr. at 17.  Further, in explaining the weight he gave the opinions of the consulting physicians, he noted that he found Plaintiff's RFC to be more limited than the state consultants did after he took Plaintiff's morbid obesity into consideration.  Tr. at 17.

Plaintiff claims that the ALJ did not provide a sufficient explanation of how he determined "whether obesity caused any physical or mental limitations."  Pl.'s Br. at 11.  She claims that the ALJ's paragraph discussing Plaintiff's morbid obesity is not specific enough.

She argues that the ALJ "insinuates" that based Plaintiff's RFC on limitations he "thought she might have if she lost weight." Pl.'s Br. at 13.  She claims that such an approach runs afoul of SSR 02-1p, which acknowledges treatment for weight loss is often unsuccessful and that the Commissioner will "rarely use 'failure to follow prescribed treatment' for obesity to deny or cease benefits." SSR 02-1p.  *See* Pl.'s Reply Br. at 2.

The Commissioner argues that the ALJ adequately discussed the medical evidence relating to Plaintiff's obesity at length in his decision and discussed her testimony regarding her weight and resulting functional limitations.  Def.'s Br. at 11  12 (*citing* Tr. at 15  17). The undersigned agrees with the Commissioner.

In finding obesity was one of Plaintiff's severe impairments, the ALJ found that Plaintiff's obesity "significantly limit[ed] [her] physical and mental abilities to do basic work activities." *See* 20 C.F.R. § 404.1520(c).   In discussing Plaintiff's RFC, the ALJ explained that he factored Plaintiff's morbid obesity into his determination that Plaintiff was limited to light work.  Tr. at 17 (ALJ noting he found Plaintiff more limited in her RFC than state experts after considering her morbid obesity). Consultants Dr. Van Slooten and Dr. Anderson found Plaintiff could perform a range of medium work, but the ALJ limited her to light work with additional restrictions.  Tr. at 277  84, 322  29.

The undersigned is of the opinion that the ALJ adequately explained his consideration of Plaintiff's severe impairment of morbid obesity in determining whether Plaintiff was disabled.

III.    Conclusion

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the foregoing, the court finds that the Commissioner performed an adequate review of the whole record, including evidence regarding Plaintiff's conditions, and the decision is supported by substantial evidence.

Accordingly, pursuant to the power of the court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in Social Security actions under Section 205(g), sentence four, and Section 1631(c)(3) of the Act, 42 U.S.C. Sections 405(g) and 1383(c)(3), it is recommended that the Commissioner's decision be affirmed.

IT IS SO RECOMMENDED.

May 31, 2011                              Shiva V. Hodges
Florence, South Carolina                  United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

33